CHIN, *Senior Circuit Judge*, statement of views with respect to the denial of rehearing *en banc*:[1]

In my view, for the reasons set forth in Judge Merriam's dissent from the denial of rehearing *en banc* and in my dissent from the panel decision, *see United States v. Johnson*, 117 F.4th 28, 53 (2d Cir. 2024), the Court should have voted to rehear this case *en banc*. Defendant-appellant Rickey Johnson's convictions should be set aside because he was found guilty by a jury of fewer than twelve persons, in clear violation of his rights. I write only to emphasize a few points.

First, the panel majority concluded that "the Supreme Court has said that there is no constitutional right to a twelve-member jury." *Id.* at 40 (discussing *Williams v. Florida*, 399 U.S. 78, 102 (1970)). But *Williams* involved state criminal proceedings and a Florida statute that permitted six-person juries in non-capital cases. *See* 399 U.S. at 86 ("We hold that the 12-man panel is not a necessary ingredient of 'trial by jury,' and that [the State]'s refusal to impanel more than the six members provided for by Florida law did not violate

---

[1] As a senior judge, I have no vote on whether to rehear a case *en banc*. *See* Fed. R. Civ. P. 35(a). As a member of the original panel in this case, however, pursuant to the Court's *en banc* protocols, I may file a statement of views in the circumstances here, where an active judge has filed a dissent from an order of the Court denying or granting rehearing *en banc*.

petitioner's Sixth Amendment rights as applied to the State through the Fourteenth [Amendment]."). The Supreme Court's holding that a defendant does not have a Sixth Amendment right to a twelve-person jury in *those* circumstances does not preclude the conclusion that a defendant has a constitutional right to a twelve-person jury in *federal* criminal proceedings, and this is very much an open question. *See United States v. Curbelo*, 343 F.3d 273, 279 n.5 (4th Cir. 2003) (noting that "the Supreme Court has never *held* that the Sixth Amendment does *not* require a twelve-person jury in *federal* prosecutions." (third emphasis added)); 2 Charles Alan Wright & Peter J. Henning, Federal Practice and Procedure § 373 (4th ed. 2009) ("Rule 23(b)(1) continues to require a jury of 12, and it may well be that in federal court a jury of that size is still constitutionally compelled." (footnotes omitted)). In light of the constitutional protections given to the right of trial by jury generally,[2] the importance of a twelve-person jury in our history,[3]

---

[2]    *See* U.S. Const. art. III, § 2, cl. 3 ("The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury."); U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . .").

[3]    "[T]he general infrastructure of the criminal jury as a twelve-member body rendering unanimous verdicts was clearly established by" the late 14th century in England. Robert H. Miller, Comment, *Six of One is Not a Dozen of the Other: A Reexamination of* Williams v. Florida *and the Size of State Criminal Juries*, 146 U. Pa. L. Rev. 621, 638-39 (1998); *see also Ramos v. Louisiana*, 590 U.S. 83, 90 (2020) (noting that one late 14th century English decision stated that a "'verdict, taken from eleven, was no verdict'

and the clear terms of Rule 23(b) of the Federal Rules of Criminal Procedure,[4] there is, I believe, a constitutional right to a twelve-person jury in *federal* criminal proceedings.  Accordingly, even assuming structural error requires constitutional error, Rickey Johnson's constitutional right to a twelve-person jury was violated here.

        Second, as Judge Merriam persuasively argues and as set forth in my dissent from the panel decision, the law does not limit structural errors to

---

at all" (quoting James Bradley Thayer, A Preliminary Treatise On Evidence At The Common Law 88-89 n.4 (1898)).  In 1769, Blackstone reiterated the common-law rule -- no person could be found guilty of a serious crime unless "the truth of every accusation . . . should afterwards be confirmed by the unanimous suffrage of twelve of his equals and neighbours, indifferently chosen." William Blackstone, 4 Commentaries on the Laws of England 349 (Thomas Cooley ed., 1871).  This same common-law rule applied in the young American colonies, *see, e.g.*, IV. *Unshrinking the Federal Civil Jury*, 110 Harv. L. Rev. 1466, 1468 (1997) ("In the American colonies, the Charter of Jamestown established the twelve-person jury in 1607."), and well after the Sixth Amendment's adoption, *see, e.g.*, Joseph Story, 2 Commentaries on the Constitution of the United States 588 (1858) ("And a trial by jury is generally understood to mean, *ex vi termini*, a trial by a jury of *twelve* men, impartially selected, who must *unanimously* concur in the guilt of the accused before a legal conviction can be had.  Any law therefore, dispensing with any of these requisites, may be considered unconstitutional."); *Foote v. Lawrence*, 1 Stew. 483, 483 (Ala. 1828) ("The term *jury* is well understood to be twelve men . . . ."); *Work v. State*, 2 Ohio St. 296, 304 (1853) ("The number must be twelve . . . .").

[4]     Rule 23(b)(1) provides that "[a] jury consists of 12 persons unless this rule provides otherwise."  Rule 23(b)(2)(A) provides that the parties may stipulate in writing, with the court's approval, to a jury of "fewer than 12 persons."  Rule 23(b)(3) provides, however, that "[a]fter the jury has retired to deliberate, the court may permit a jury of 11 persons to return a verdict, even without a stipulation by the parties, if the court finds good cause to excuse a juror."

those of a constitutional dimension. Even if the right to a twelve-person jury in federal criminal cases is not a constitutional right, it surely is a "substantial right." *See* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does *not* affect *substantial* rights must be disregarded." (emphases added)). Structural errors "infect the entire trial process," *Neder v. United States*, 527 U.S. 1, 8 (1999) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 630 (1993)), and harmless error review is inappropriate where "the effects of the error are simply too hard to measure," *Weaver v. Massachusetts*, 582 U.S. 286, 295 (2017). The "defining feature of a structural error," *id.*, is that it "affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself," *Neder*, 527 U.S. at 8. The error here infected the framework of the trial itself, and its effects are indeed too hard to measure because we cannot, on appeal, know with any degree of certainty what impact a twelfth juror would have had in this exceedingly close case, where the eleven-person jury clearly labored to reach a unanimous verdict. An additional juror could have tipped the balance or caused a hung jury and a mistrial. The district court's error in denying Johnson a twelve-person jury is, in my view, structural, and therefore harmless error analysis does not apply.

4

Third, even if the error is not deemed structural and harmless error analysis does apply, the government failed to meet its burden of demonstrating that the error was harmless. Where a defendant timely objects to an error and Rule 52(a) applies, the government bears the burden of showing that the defendant was not prejudiced by the error. *See United States v. Olano*, 507 U.S. 725, 734-35 (1993). The government has not met its burden here. This was indeed a close case, as the jury deliberated for more than two days to render a split verdict, sending out notes showing that it was struggling (including inquiring about the impact of mental illness in a case where the defendant engaged in manifestly erratic behavior), when the presentation of evidence took only the equivalent of one day. These are all indications that the jury had great difficulty reaching a verdict; a twelfth juror could very well have tipped the balance or brought about a deadlock. *See generally* 117 F.4th at 61-63.[5] The panel's decision is also problematic because it injects a prejudice requirement

---

[5] In determining whether the government has met its burden, "we ask whether we can conclude with fair assurance that the errors did not substantially influence the jury." *United States v. Gupta*, 747 F.3d 111, 133 (2d Cir. 2014) (citation and quotation marks omitted). "The inquiry cannot be merely whether there was enough [evidence] to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." *Kotteakos v. United States*, 328 U.S. 750, 765 (1946).

into Rule 23(b) when no such requirement exists, and it would effectively permit a trial court to proceed with an eleven-person jury whenever it believed there was good cause to excuse a juror and the evidence of guilt was strong.

Finally, in these *en banc* polls where members of the Court debate whether "questions of exceptional importance" are presented, Fed. R. App. P. 40(b)(2)(D), we must not lose sight of the impact our rulings have on the individuals involved. Even if it is not likely that the error that occurred in this case will recur with any frequency, Johnson still bears the burden of the collateral consequences that come with three felony convictions.

In short, the Court should have granted rehearing *en banc*, the judgment of the district court should be vacated, and the case should be remanded for a new trial – before a jury of twelve.